**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VANESSA T. HAYES, as the Personal Representative of the Estate of Gerard El Hayes,<br><br>                 Plaintiff,<br><br>            v.<br><br>DISTRICT OF COLUMBIA,<br><br>                Defendant. | Civil Action No. 11-00800 (BAH)<br>Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

      Plaintiff Vanessa T. Hayes, as the Personal Representative of the Estate of Gerard El Hayes, brought this lawsuit in the Superior Court of the District of Columbia ("D.C. Superior Court") against the District of Columbia seeking damages under 42 U.S.C. § 1983 and the United States Constitution, including the Fifth Amendment, as well as common law claims, following the death of her son while he was in police custody.  Complaint ("Compl."), ECF No. 1-1.[1]  The District of Columbia removed this action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, *see* Notice of Removal, ECF No. 1, and the plaintiff then filed a six-count Amended Complaint alleging wrongful death (Count I), denial of medical care (Count II), denial of protection from harm (Count III), negligence (Count IV), negligent supervision (Count V), and assault and battery (Count VI).  Amended Complaint ("Am. Compl."), ECF No. 12.  Pending before the Court is the Defendant's Motion for Summary Judgment, ECF No. 26.  For the reasons explained below, the Court grants the motion.

---

[1] The original Complaint refers to the decedent on multiple occasions as "Shantee Parker."  Compl. ¶¶ 1, 31.  That appears to be a mistake as no other reference to "Shantee Parker" is made in the Amended Complaint or in the briefing papers.

1

## I.     BACKGROUND

On January 28, 2010, the plaintiff's decedent, Gerard El Hayes, was arrested on an

outstanding warrant for armed burglary, abduction, and use of a firearm in the commission of a

felony and taken to the Seventh District Station of the Metropolitan Police Department in

Southeast Washington.  Am. Compl. ¶¶ 3, 6; Def.'s Statement of Facts ("Def.'s Facts"), ECF 26-

1, at 1; Final Investigative Report Concerning the Death in Police Custody of Mr. Gerard Hayes

("Final Investigative Report"), ECF No. 28-2, at 1.  The Final Investigative Report states that the

arrest warrant "stemmed from an incident in which Mr. Hayes entered the residence of his

former girlfriend . . . and held her against her will at gunpoint." *Id*.  The Final Investigative

Report noted that Mr. Hayes was apparently "distraught over their 'break up.'" *Id*.  That incident

ended without anyone being harmed, and Mr. Hayes "expressed remorse" to his former girlfriend

and told her "that he wasn't going to jail." *Id*.  He also "mentioned suicide to her." *Id*.[2]

The officers who arrested Mr. Hayes described him as being "calm and compliant at the

time of his arrest," and the police report notes that "[n]o force was used during the apprehension

of Mr. Hayes," an assertion that is not disputed. *Id*. at 2.

After Mr. Hayes was brought to the Seventh District Station, an "inventory search" was

conducted by civilian Cellblock Technician Mr. Gary Forbes, who found only cash and a watch

on Mr. Hayes. *Id*.  While the plaintiff alleges in the Amended Complaint that her son showed

signs of "distress, disorientation, and confusion," at the police station, Am. Compl. ¶ 8,

Technician Forbes "described Mr. Hayes as being very compliant during his contact with him,"

---

[2] The plaintiff submitted this Final Investigative Report as evidence in support of her Opposition to the Motion for Summary Judgment.  ECF No. 28-2.  In its Reply, the defendant interposes no objection to consideration of these attachments to plaintiff's Opposition.  The Court therefore proceeds under the assumption that this report, as well as the Report of Investigation, which was also attached to the plaintiff's Opposition to the instant motion, may be considered in these summary judgment proceedings.

Final Investigative Report at 2, and there is no evidence cited in the record for the plaintiff's allegation that the decedent was agitated or confused.

Technician Forbes also searched "holding cell number one" before placing Mr. Hayes inside. *Id.* The empty cell was apparently clear and Mr. Hayes was placed in the cell, where he was alone. *See id.* The Final Investigative Report notes that "[n]o member of the Metropolitan Police Department was informed that Mr. Gerard Hayes had mentioned suicide to his ex-girlfriend or was contemplating suicide." *Id.* at 1 n.1.

Soon after he had been placed in the holding cell, Mr. Hayes requested water from Technician Forbes, a request that was then relayed to Cellblock Technician Agnes Jackson. *Id.* at 2. Besides this request for water, there is no evidence in the record that Mr. Hayes had any other interaction or contact with anyone else while he was alone in the holding cell.

Technician Jackson went to inform Mr. Hayes that she would get him the water after talking with a female prisoner, Complainant/Witness Statement of Agnes Jackson, dated Jan. 28, 2010 ("Jackson Witness Statement"), ECF No. 28-4 at 2,[3] but when Technician Jackson returned to the cell block area, "she discovered Mr. Hayes sitting on the floor of holding cell number one with a ligature [or string] around his neck." Final Investigative Report at 2. "The ligature was also tied to the bar of the cell door." *Id.* Upon seeing Mr. Hayes hanging from the bars, she "began screaming and hollering for help and . . . she attempted to remove Mr. Hayes from the cell bars." Report of Investigation by Detective John Hendrick, dated Jan. 28, 2010 ("Report of Investigation"), ECF No. 28-4, at 1.[4]

---

[3] As noted, the Report of Investigation, which includes the Complainant/Witness Statement, as well as an Interview of Technician Gary Forbes, was submitted as evidence by the plaintiff attached to her Opposition to the Motion for Summary Judgment. ECF No. 28-4.

[4] Technician Forbes "reported that the time between his search" of Mr. Hayes, where he recovered only cash and a watch, and when the prisoner was found unconscious in his cell was about "an hour and a half to two hours." Interview of Technician Gary Forbes, ECF No. 28-4, at 3.

According to Detective Hendrick's Report of Investigation, after Technician Jackson called for help, Technician Forbes, and Officers Washington and Robertson "entered the cellblock and assisted her with removing Mr. Hayes from the cell bars where he had attached a string to his neck." *Id.* According to Technician Jackson, Officer Robinson "began" performing CPR on Mr. Hayes, Jackson Witness Statement at 2, and an officer then called 9-1-1, Report of Investigation. Mr. Hayes was then transported to a hospital where he was pronounced dead. Final Investigative Report at 2.

The medical examiner, Lois Goslinoski, later confirmed that Mr. Hayes, who was 38 years old, died by hanging and ruled his death a "suicide." Am. Compl. ¶ 6; Autopsy Report, ECF No. 26-3. The medical examiner explained that it would take "anywhere from eight to fifteen seconds" for an adult to lose consciousness from hanging from a ligature, Deposition of Lois Goslinoski, dated May 16, 2012 ("Goslinoski Dep."), ECF No. 28-3, at 30:11-12, and that someone being hung from a ligature like the one found hanging the decedent could keep it from getting tight around his neck by standing up, *id.* at 28:9-19.[5] In this case, the medical examiner found no evidence that the decedent attempted to stand up or defend himself from being hung. *Id.* at 29:13 ("There's no evidence of defense here."). In fact, the medical examiner found "no other injuries" on the plaintiff, and no "indication that [the hanging] was done against his will." *Id.* at 21:4-6, 29:10-13.

When the scene of the decedent's death was later "processed" by Forensic Science Services Division Technicians Julius Smith and Ralph Nitiz, two "separate pieces of cloth string" were discovered. Final Investigative Report at 2. "One piece was a single segment, light gray in color and appeared to have been cut on both ends." *Id.* The second piece was also "light gray in

---

[5] Excerpts from the Goslinoski Deposition were submitted as evidence by the plaintiff, attached to her Opposition to the Motion for Summary Judgment. ECF No. 28-3.

4

color." *Id*.  The technician searching the cell before the decedent was placed inside of it had not

"notice[d] any strings in the cell." *Id*.

Following the initiation of this action in the D.C. Superior Court, the defendant removed

the Complaint to this Court on the basis of the plaintiff's claims brought pursuant to 42 U.S.C. §

1983 and the Fifth Amendment.  *See* Notice of Removal at 1 ("In paragraphs 25 through 33, the

Complaint raises a federal question by asserting federal constitutional claims pursuant to 42

U.S.C. [§] 1983 and the Fifth Amendment.").

The plaintiff subsequently filed the Amended Complaint, which largely mirrors the

original Complaint, on July 29, 2011, and the parties proceeded to discovery for a period of nine

months.  *See* Minute Order (Oct. 3, 2011) (Scheduling Order); Minute Order (May 1, 2012)

(extending discovery until July 16, 2012).

Pending before the Court is the Defendant's Motion for Summary Judgment, ECF No.

26.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Summary judgment is properly

granted against a party who, "after adequate time for discovery and upon motion, . . . fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).  The burden is on the moving party to demonstrate that there is an "absence of a

genuine issue of material fact" in dispute.  *Id*. at 323.  "[T]he burden on the moving party may be

discharged by 'showing'—that is, pointing out to the district court—that there is an absence of

evidence to support the nonmoving party's case." *Id*.

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party, and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Estate of Parsons v. Palestinian Auth*., 651 F.3d 118, 123 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider "other materials in the record." FED. R. CIV. P. 56(c)(3).

For a factual dispute to be "genuine," *Estate of Parsons*, 651 F.3d at 123, the nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position, *Anderson*, 477 U.S. at 252, and cannot simply rely on allegations or conclusory statements, *see Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Anderson*, 477 U.S. at 250. "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (citation and internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In that situation, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*.

### III.     DISCUSSION

In moving for summary judgment, the defendant argues that (1) the plaintiff has abandoned her Fifth Amendment claims brought pursuant to 42 U.S.C. § 1983 (Counts II and III), (2) the plaintiff has abandoned her claims that her son committed suicide because of the District of Columbia's negligence or negligent supervision (Counts IV and V), and (3) there is no evidence supporting the plaintiff's allegations that her son's death was the result of assault and battery (Count VI). The defendant further argues that (4) even assuming that the plaintiff's son was murdered while in police custody, the District of Columbia is not liable, and that (5) the plaintiff's wrongful death claim (Count I) is not supported by evidence. The plaintiff responds only that there is "no basis for summary judgment" as to "counts V [negligent supervision] and VI [assault and battery] of plaintiff's complaint," Pl.'s Mem. in Opp'n to the Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 28, at 1. The Court addresses each of the defendant's arguments in turn.

#### A.     <u>Fifth Amendment and 42 U.S.C. § 1983 Claims</u>

The Court first turns to the defendant's claim that the plaintiff "has abandoned her Fifth Amendment Claims [namely, denial of medical care, Count II, and denial of protection from harm, Count III] brought pursuant to 42 U.S.C. § 1983." Def.'s Mem. at 4-5. Specifically, the defendant points to the plaintiff's answers to the interrogatories, where, when asked about her Fifth Amendment claims, the plaintiff stated, "I do not believe that my son's Fifth Amendment rights were violated." *Id*. at 5 (quoting Pl.'s Answers to Def.'s Interrogatories ("Pl.'s Answers"), ECF No. 26-2, No. 20). Furthermore, when asked to identify information related to her claim that her son's Fifth Amendment rights were violated, the plaintiff answered "N/A." Pl.'s Answers No. 22.

The defendant also notes that while the plaintiff "vaguely allude[d] to other amendments of the United States Constitution in the Amended Complaint, no other constitutional amendments have been cited by Plaintiff and she has not developed any record evidencing a violation of any other constitutional provision on the part of the District of Columbia." Def.'s Mem. at 5; *see also* Am. Compl. ¶¶ 25-29.

The plaintiff does not respond to the defendant's arguments regarding Counts II and III at all in her Opposition, "submit[ting]" only that there is "no basis for summary judgment as to counts V and VI of plaintiff's complaint." Pl.'s Opp'n at 1. "It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002)); *Shankar v. ACS–GSI*, 258 F. App'x 344, 345 (D.C. Cir. 2007) (per curiam) (affirming the district court's granting of summary judgment for the defendant where appellant had conceded his claims) (citing LCvR 7(b)). Since the plaintiff failed to respond at all to the defendant's arguments regarding her claims brought under the U.S. Constitution under 42 U.S.C. § 1983, the Court treats these arguments as conceded and grants the defendant summary judgment as to Counts II (denial of medical care) and III (denial of protection from harm).

Although the Court grants summary judgment for the defendant as to the plaintiff's two federal claims, the Court agrees with the defendant that it is appropriate for the Court to retain supplemental jurisdiction over the plaintiff's remaining common law claims given that the "[p]laintiff has had a full and fair opportunity to develop her claim" and that it "would not be fair to subject the District to yet further litigation in another forum over the same matter." Def.'s

Reply to Pl.'s Opp'n to Mot. for Summ. J. ("Def.'s Reply"), ECF No. 29, at 3. The Court

therefore exercises its discretion to retain supplemental jurisdiction over the plaintiff's remaining

claims. *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423-24 (D.C. Cir. 2005) ("A district court

may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims

are dismissed.") (citing 28 U.S.C. § 1367(c)(3)). The Court will thus proceed to the defendant's

remaining arguments.

### B.   Negligence and Negligent Supervision Claims

The Court next turns to the defendant's argument that the plaintiff "has also abandoned

her claims found in Counts IV [negligence] and Count V [negligent supervision]." Def.'s Mem.

at 5. In both of those claims, the plaintiff alleges that "[a]s a direct and proximate result of the

acts and omissions of the District of Columbia, the plaintiff's decedent suffered a horrible death

by self[-]inflicted hanging." Am. Compl. ¶¶ 38, 42; *see also id*. ¶ 1 (alleging that "the defendant

failed to train members of the Metropolitan Police Department in how to properly identify and

assess potential suicidal detainees and knowingly disregarded the clearly identifiable and known

risk that plaintiff's decedent exhibited by way of specific symptomology which warranted full

psychiatric assessment and treatment and indicated that he was likely to commit suicide, if given

the opportunity"); *id*. ¶ 8 (noting that "[h]ad members of the Metropolitan Police Department

been properly and adequately trained, they would have immediately been alerted to the fact that

plaintiff's decedent was making a plea for help and that suicide was being considered"); *id*.

(noting that "even though plaintiff's decedent had clearly and persistently exhibited signs of

distress and that he was a suicide risk, throughout his detention, none of the personnel at the 7th

District Station, properly monitored plaintiff's decedent or assured that he was not placed in an

environment where instruments that could be used in a suicide attempt were not available"); *id*. ¶

9 ("Because he was not provided any care and/or treatment of any kind, and because he was not monitored in any way, plaintiff's decedent did in fact suffer a horrible death by way of a self-inflicted hanging which was a foreseeable consequence of the deliberately indifferent care, treatment and monitoring afforded plaintiff's decedent.").

While the plaintiff's negligence and negligent supervision claims in her Amended Complaint were clearly premised on allegations of the District of Columbia's negligence in protecting her son from committing suicide, the plaintiff stated in her answers to interrogatories that "I do not believe that my son committed suicide." Pl.'s Answers No. 16. In addition, the plaintiff stated, in response to a question about potential witnesses available to support her negligence claim, that "My son was strangled. I am unaware of who may have witnessed the murder." Pl.'s Answers No. 19. In light of these statements from the plaintiff, the defendant contends that the District of Columbia should be granted summary judgment as to the plaintiff's negligence and negligent supervision claims, which are worded identically, because the plaintiff "has abandoned her claim that the negligence of the District of Columbia resulted in the suicide of her son." Def.'s Mem. at 6.

The plaintiff, in her Opposition, does not specifically dispute the defendant's argument regarding her negligence claim (Count IV). In fact, as noted, she apparently concedes the negligence claim by arguing only that there is "no basis for summary judgment . . . as to counts V [negligent supervision] and VI [assault and battery] of the plaintiff's complaint." Pl.'s Opp'n at 1. While the plaintiff notes that, "[f]or reasons that are unclear, the District asserts that the plaintiff 'has abandoned her Negligence and Negligent Supervision Claims,'" *id.* at 7, the plaintiff only affirmatively states that she has not abandoned her "negligent supervision claim," and does not specifically address the defendant's arguments regarding her separate negligence

claim.  Therefore, the Court will grant the defendant's arguments as to the plaintiff's negligence claim as conceded and grant the defendant summary judgment as to Count IV.  *See Buggs*, 293 F. Supp. 2d at 141 (citing *Bender*, 127 F.3d at 67-68; *Stephenson*, 223 F. Supp. 2d at 121); *Shankar*, 258 F. App'x at 345 (affirming the district court's granting of summary judgment for the defendant where appellant had conceded his claims) (citing LCvR 7(b)).

The plaintiff, as noted, disputes the defendant's argument that she has abandoned her claim for negligent supervision, asserting (in a heading of her Opposition) that she "[h]as [n]ever [i]ndicated [t]hat [s]he [h]as [a]bandoned [h]er [c]laim [f]or [n]egligent [s]upervision."  Pl.'s Opp'n. at 7.  In support of her claim, the plaintiff points to the legal standard for negligent supervision in *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985), as well as to the definition of negligent supervision in the Second Restatement of Agency.  Pl.'s Opp'n at 8.  Her entire argument in opposition to the defendant's Motion for Summary Judgment on this claim is that "Plaintiff's claim for negligent supervision fits perfectly in subsection (d) of the Restatement of Agency," which states:

> A person conducting an activity through services or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: . . . (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Pl.'s Opp'n at 8 (quoting RESTATEMENT (SECOND) OF AGENCY § 213 (1958)).

The plaintiff's cursory arguments are unavailing, however.  The plaintiff's negligence and negligent supervision claims in her Amended Complaint were premised on her theory that "[a]s a direct and proximate result of the acts and omissions of the District of Columbia, the plaintiff's decedent suffered a horrible death by self[-]inflicted hanging."  Am. Compl. ¶¶ 38, 42. While the plaintiff pled in her Amended Complaint an alternative theory that the "decedent was subjected to an assault and battery so severe and violent that it culminated in the hanging of

plaintiff's decedent," Am. Compl. ¶ 17, her negligent supervision claim (as well as her

negligence claim) was related solely to her allegations regarding her son's death by suicide.

Since she no longer maintains her claim that her son suffered a death "by self[-]inflicted

hanging," she has abandoned her claim of negligent supervision based on that allegation.

Accordingly, the Court will grant the defendant summary judgment as to the plaintiff's negligent

supervision claim (Count V).

### C.     Assault and Battery Claim

The Court next turns to the defendant's argument that no evidence exists to support the

plaintiff's assault and battery claim.  In her Amended Complaint, as noted, the plaintiff pleads,

"[a]lternatively," that "plaintiff's decedent was subjected to an assault and battery so severe and

violent that it culminated in the hanging of plaintiff's decedent."  Am. Compl. ¶ 17.  Specifically,

in Count VI, she alleges that "[t]he defendant through unknown agents and/or employees without

proper grounds, willfully and maliciously attacked Gerard El Hayes," that "[a]ll of the injuries

suffered by the plaintiff were inflicted without provocation from plaintiff's decedent and while

he was presenting no immediate threat to anyone," and, finally, that "[a]s a direct and proximate

result of the willful, malicious and intentional actions of defendant's unknown agents and/or

employees, the plaintiff suffered serious bodily injury and eventually death from the unprovoked

assault."  *Id.* ¶¶ 44, 45.  The premise of the plaintiff's assault and battery claim is articulated

most starkly in her answers to interrogatories, that her son was murdered by strangling.  Pl.'s

Answers No. 19 ("My son was strangled.  I am unaware of who may have witnessed his

murder.").

In the instant motion, the defendant argues, however, that the record is simply "devoid of

any evidence from which a jury could conclude that the decedent's life was taken by unknown

persons."  Def.'s Mem. at 6.  Specifically, the defendant contends that the medical examiner

"testified consistently with her autopsy report that decedent's cause of death was hanging and the manner of death was suicide," and that these "findings are unrefuted." Def.'s Mem. at 6. Furthermore, there are no witnesses to support an assault claim, as the plaintiff acknowledged in her answers to interrogatories, *see* Pl.'s Answers No. 19 ("I am unaware of who may have witnessed the murder."). Even after ample discovery, the plaintiff has not presented any report of an expert who can testify "to a reasonable degree of professional certainty that it is more likely than not that Plaintiff was murdered as opposed to having committed suicide." Def.'s Mem. at 6.

The plaintiff responds that the defendant's argument that the record is "devoid of evidence" to support her assault and battery claim is "simply not true." Pl.'s Opp'n at 3. The plaintiff argues that there are facts, when viewed in the light most favorable to the plaintiff, to cause a jury to conclude that Mr. Hayes "did not hang himself." *Id*. at 4. According to the plaintiff, these facts are: (1) the decedent was found with string around his neck after Technician Forbes had searched him and found no string on him or in the cell before placing him in the cell, (2) the string around the decedent's neck would have had to be strong enough "to hold a 245 pound man" and the medical examiner acknowledged that no one had tested the strength of the string, and (3) there was no investigation conducted by the Office of the Chief Medical Examiner of the decedent's death, although "in all cases in which there is an unnatural death in the District of Columbia, an investigator from the Office of the Chief Medical Examiner goes to the scene of the death." *Id*. at 3-4.

The plaintiff's arguments are not persuasive, however, as an examination of the evidence put forward by the plaintiff herself provides no support for her arguments. First, it is clear from the evidence that the plaintiff was alone in holding cell number one, with the door locked. After

he was placed in the cell by Technician Forbes, the record reveals only *one* interaction with

another human being, which was his request to Technician Forbes for a glass of water.  *See* Final

Investigative Report at 2 ("Mr. Hayes was placed into holding cell one between 9:00 and 9:30

AM.  Shortly after 10:00 AM, Mr. Hayes asked Technician Forbes for some water.").  There is

simply no evidence in the record that could support the plaintiff's statement that "[a] reasonable

inference is that District employees responsible for the cell block where Mr. Hayes was housed

became agitated because his repeated requests for water were interfering with their other duties

and therefore, one or more of them decided to teach Mr. Hayes a lesson and in the process,

caused his death."  Pl.'s Opp'n at 7.  To the contrary, the record shows that he made *one* request

for a glass of water, not multiple requests, and there is absolutely no indication in the record that

his request for water was viewed as an "interfer[ence]."  Rather, that request was conveyed to

Technician Jackson, who returned to the cell to tell Mr. Hayes that she would get his water after

she spoke with a female prisoner only to find Mr. Hayes alone in his cell unconscious, hanging

from a ligature.[6]

Second, there is no evidence or specific allegation of any physical (or mental or

psychological) mistreatment of Mr. Hayes by *any* arresting officer or anyone at the police

station.  Both the arresting officers and the technician who searched Mr. Hayes and his cell found

him "compliant."  Final Investigative Report at 2.  There is simply no evidence that supports a

claim that there was an assault of any kind on the plaintiff.

Third, and critically, the medical examiner concluded that the decedent died by suicide.

She found no evidence on his body that he had struggled in any way, or attempted to defend

---

[6] The plaintiff makes no attempt to impugn the statements of the key witnesses identified in the evidence, including Technician Forbes, Technician Jackson, and the medical examiner.  The plaintiff makes no specific assertion that these witnesses are not credible or have presented inconsistencies, or that the Court should discredit their statements for any reason.

himself, against an attacker.  To the contrary, she was unequivocal in stating that (1) a person being strangled with string would only have to stand up to keep himself from being hung, (2) there was "no evidence of defense here" on the part of the plaintiff, (3) the plaintiff had "no other injuries," and (4) there was no "indication that [the hanging] was done against his will." Goslinoski Dep. at 21:4-6, 29:10-13.  The plaintiff has offered no expert reports to dispute the medical examiner's findings or to testify that the plaintiff's death was a suicide.  The plaintiff has also offered *no* plausible theory and zero evidence to suggest why a 245-pound man being strangled would show no signs that he struggled with an assailant or attempted to stand up to prevent his own death.

Fourth, and finally, the plaintiff herself submitted the Final Investigative Report from the police which states that Mr. Hayes had told his former girlfriend that "he wasn't going to jail and mentioned suicide to her."  Final Investigative Report at 1.  Taken together, all of the evidence indicates, as the medical examiner concluded, that the decedent committed suicide.  No reasonable jury could find otherwise.

In light of the record evidence, the plaintiff's arguments that a reasonable jury could find that Mr. Hayes did not hang himself are simply unavailing.  First, while the plaintiff argues that this case was unusual in that the Office of the Chief Medical Examiner did not conduct an investigation at the "scene of the death," Pl.'s Opp'n at 4, there is nothing in the evidence to show how or why this was problematic given that the medical examiner conducted a thorough review of the decedent's body, as evidenced in the Autopsy Report and her deposition, and the scene of the crime was processed by two Forensic Science Services Division Technicians.  Final Investigative Report at 2.  The plaintiff makes no persuasive argument that any other investigation was appropriate, or necessary, in this circumstance.  Second, although the plaintiff

15

suggests that the "string" found around Mr. Hayes' neck came from outside of the decedent's locked cell, it is just as plausible that the string was simply overlooked by Technician Forbes. Finally, the plaintiff's argument that the string had not been "tested" to see if it could hold a 245-pound man also does not create an issue of fact.  The decedent was hanging from the string when he was discovered and the string had to be cut so he could be removed from it.  Final Investigative Report at 2 ("The ligature was eventually cut from Mr. Hayes' neck.").  The string was also provided to the medical examiner, who conducted the autopsy, and she voiced no concerns about the durability of the string, or suggested that it should have been tested in any way.  Goslinoski Dep. 21:10-12.  In sum, the plaintiff's conclusory allegations, unsupported by the evidence the plaintiff herself has provided this Court, are insufficient to defeat summary judgment.  Accordingly, the Court will grant the defendant summary judgment as to the assault and battery claim (Count VI).

> **D.**     **Wrongful Death Claim**

The Court next turns to the defendant's argument that the District of Columbia is entitled to summary judgment as to the plaintiff's wrongful death claim.  Specifically, the defendant argues that the plaintiff's wrongful death claim fails because such a claim requires "proof . . . of underlying tortious conduct," of which there is none here, where the District of Columbia is entitled to summary judgment on all of the plaintiff's underlying claims for relief. Def.'s Mem. at 9.  The Court agrees.  Furthermore, the plaintiff does not dispute the defendant's argument as to her wrongful death claim, and does not address it specifically in her Opposition. Therefore, the Court will grant the defendant's arguments as to the plaintiff's wrongful death claim as conceded and grant the defendant summary judgment as to Count I.  *See Buggs*, 293 F. Supp. 2d at 141 (citing *Bender*, 127 F.3d at 67-68; *Stephenson*, 223 F. Supp. 2d at 121); *Shankar*,

258 F. App'x at 345 (affirming the district court's granting of summary judgment for the defendant where appellant had conceded his claims) (citing LCvR 7(b)).

> ### E.  The District of Columbia's Liability

Finally, the defendant argues that even assuming that the plaintiff had developed evidence that the decedent had been strangled to death, the District of Columbia would still be entitled to summary judgment because it "cannot be held liable under a theory of *respondeat superior* for the torts of one of its employees unless the employee is acting within the scope of his or her employment." Def.'s Mem. at 7.  Since the Court grants the defendant summary judgment as to all of the plaintiffs' claims, and concludes that the record is, as the defendant argues, completely "devoid" of evidence that the decedent was murdered, or even assaulted, the Court need not reach this question.

## IV.  CONCLUSION

For the reasons discussed above, the Defendant's Motion for Summary Judgment, ECF No. 26, is granted.  An appropriate Order accompanies this Memorandum Opinion.

**Date:** February 7, 2013


_____
BERYL A. HOWELL
United States District Judge